IN THE DISTRICT COURT OF THE UNITED STATES

FOR THE DISTRICT OF SOUTH CAROLINA

GREENVILLE DIVISION

| | |
|---|---|
| Helene A. Cofield,              )<br>                                          )<br>                    Plaintiff,     )<br>                                          )<br>     vs.                              )<br>                                          )<br>Carolyn W. Colvin, Acting    )<br>Commissioner of Social Security, )<br>                                          )<br>                    Defendant.  )<br>_____)  | Civil Action No. 6:13-2603-DCN-KFM<br><br>**REPORT OF MAGISTRATE JUDGE** |

This case is before the court for a report and recommendation pursuant to Local Civ. Rule 73.02(B)(2)(a) (D.S.C.), concerning the disposition of Social Security cases in this District, and Title 28, United States Code, Section 636(b)(1)(B).[1]

The plaintiff brought this action pursuant to Sections 205(g) and 1631(c)(3) of the Social Security Act, as amended (42 U.S.C. 405(g) and 1383(c)(3)), to obtain judicial review of a final decision of the Commissioner of Social Security denying her claims for disability insurance benefits and supplemental security income benefits under Titles II and XVI of the Social Security Act.

**ADMINISTRATIVE PROCEEDINGS**

The plaintiff filed applications for disability insurance benefits ("DIB") and supplemental security income ("SSI") benefits on March 2, 2011, alleging that she became unable to work on February 17, 2011. The applications were denied initially and on reconsideration by the Social Security Administration. On September 20, 2011, the plaintiff requested a hearing. The administrative law judge ("ALJ"), before whom the plaintiff and Esperanza Distefano, an impartial vocational expert appeared on May 15, 2012, considered

---

[1]A report and recommendation is being filed in this case, in which one or both parties declined to consent to disposition by the magistrate judge.

the case *de novo*, and on June 6, 2012, found that the plaintiff was not under a disability as defined in the Social Security Act, as amended. The ALJ's finding became the final decision of the Commissioner of Social Security when the Appeals Council denied the plaintiff's request for review on July 31, 2013. The plaintiff then filed this action for judicial review.

In making the determination that the plaintiff is not entitled to benefits, the Commissioner has adopted the following findings of the ALJ:

> (1)     The claimant meets the insured status requirements of the Social Security Act through December 31, 2015.
>
> (2)     The claimant has not engaged in substantial gainful activity since February 17, 2011, the alleged onset date (20 C.F.R. §§ 404.1571 *et seq.* and 416.917 *et. seq*.).
>
> (3)     The claimant had the following severe impairments: bilateral carpal tunnel syndrome, s/p remote release surgeries; status post right wrist arthroscopy; status post left shoulder arthroscopic surgeries; and status post right knee surgery (20 C.F.R. §§ 404.1520(c) and 416.920(c)).
>
> (4)     The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1 (20 C.F.R. §§ 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925, and 416.926).
>
> (5)     After careful consideration of the entire record, I find that the claimant had the residual functional capacity to perform sedentary work as defined in 20 C.F.R. §§ 404.1567(a) and 416.967(a); with no climbing of ladders, ropes, and scaffolding; occasional climbing ramps or stairs; occasional balancing, stooping, kneeling, crouching, and crawling; the need to avoid concentrated exposure to respiratory irritants and hazards; no overhead work with the bilateral upper extremities; no more than frequent handling with the right upper extremity; the need to avoid concentrated exposure to extreme cold, extreme heat, or vibrations; and, the need to avoid all exposure to unprotected heights and hazardous machinery. The claimant is limited to performing simple 1 and 2-step work tasks in an environment with only occasional, casual, cursory interaction with the public and coworkers.

> (6) The claimant is unable to perform any past relevant work (20 C.F.R. §§ 404.1565 and 416.965).
>
> (7) The claimant was born on June 29, 1968 and was 42 years old, which is defined as a younger individual age 18-44, on the alleged disability onset date (20 C.F.R. §§ 404.1563 and 416.963).
>
> (8) The claimant has at least a high school education and is able to communicate in English (20 C.F.R. §§ 404.1564 and 416.964).
>
> (9) Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules support a finding that the claimant is "not disabled," whether or not the claimant has transferable job skills (*see* SSR 82-41 and 20 C.F.R. Part 404, Subpart P, Appendix 2).
>
> (10) Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform (20 C.F.R. §§ 404.1569, 404.1569(a), 416.969, and 416.969(a)).
>
> (11) The claimant has not been under a disability, as defined in the Social Security Act, from February 17, 2011, through the date of this decision (20 C.F.R. §§ 404.1520(g) and 416.920(g)).

The only issues before the court are whether proper legal standards were applied and whether the final decision of the Commissioner is supported by substantial evidence.

## **APPLICABLE LAW**

The Social Security Act provides that disability benefits shall be available to those persons insured for benefits, who are not of retirement age, who properly apply, and who are under a "disability." 42 U.S.C. § 423(a). "Disability" is defined in 42 U.S.C. § 423(d)(1)(A) as:

> the inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which

3

has lasted or can be expected to last for at least 12 consecutive months.

To facilitate a uniform and efficient processing of disability claims, the Social Security Act has by regulation reduced the statutory definition of "disability" to a series of five sequential questions. An examiner must consider whether the claimant (1) is engaged in substantial gainful activity, (2) has a severe impairment, (3) has an impairment that equals an illness contained in the Social Security Administration's Official Listings of Impairments found at 20 C.F.R. Part 4, Subpart P, App. 1, (4) has an impairment that prevents past relevant work, and (5) has an impairment that prevents him from doing substantial gainful employment. 20 C.F.R. §§ 404.1520, 416.920. If an individual is found not disabled at any step, further inquiry is unnecessary. *Id.* §§ 404.1520(a)(4), 416.920(a)(4).

A plaintiff is not disabled within the meaning of the Act if he can return to past relevant work as it is customarily performed in the economy or as the claimant actually performed the work. SSR 82–62, 1982 WL 31386, at *3. The plaintiff bears the burden of establishing his inability to work within the meaning of the Act. 42 U.S.C. § 423(d)(5). He must make a prima facie showing of disability by showing he is unable to return to his past relevant work. *Grant v. Schweiker*, 699 F.2d 189, 191 (4th Cir. 1983).

Once an individual has established an inability to return to his past relevant work, the burden is on the Commissioner to come forward with evidence that the plaintiff can perform alternative work and that such work exists in the regional economy. The Commissioner may carry the burden of demonstrating the existence of jobs available in the national economy which the plaintiff can perform despite the existence of impairments which prevent the return to past relevant work by obtaining testimony from a vocational expert. *Id.*

The scope of judicial review by the federal courts in disability cases is narrowly tailored to determine whether the findings of the Commissioner are supported by substantial evidence and whether the correct law was applied. *Hays v. Sullivan*, 907 F.2d 1453, 1456 (4th Cir. 1990). Consequently, the Act precludes a *de novo* review of the evidence and requires the court to uphold the Commissioner's decision as long as it is supported by substantial evidence. *See Pyles v. Bowen*, 849 F.2d 846, 848 (4th Cir. 1988) (citing *Smith v. Schweiker*, 795 F.2d 343, 345 (4th Cir. 1986)). The phrase "supported by substantial evidence" is defined as:

> evidence which a reasoning mind would accept as sufficient to support a particular conclusion. It consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance. If there is evidence to justify a refusal to direct a verdict were the case before a jury, then there is "substantial evidence."

*Laws v. Celebrezze*, 368 F.2d 640, 642 (4th Cir. 1966) (citation omitted).

Thus, it is the duty of this court to give careful scrutiny to the whole record to assure that there is a sound foundation for the Commissioner's findings and that the conclusion is rational. *Thomas v. Celebrezze*, 331 F.2d 541, 543 (4th Cir. 1964). If there is substantial evidence to support the decision of the Commissioner, that decision must be affirmed. *Blalock v. Richardson*, 483 F.2d 773, 775 (4th Cir. 1972).

## **EVIDENCE PRESENTED**[2]

The plaintiff alleges disability beginning February 17, 2011, at which time she was 42 years old. She was 43 years old as of the date of the ALJ's decision. She has a high school education and past relevant work as an aide to mentally challenged patients (Tr. 572).

---

[2]Only the medical evidence pertinent to the parties' arguments has been cited.

***Dr. David S. Rogers***

The plaintiff first saw David S. Rogers, M.D., at the Oaktree Medical Center in Easley, South Carolina, for an independent medical evaluation on March 4, 2010. The plaintiff complained to Dr. Rogers of sinus congestion, sore throat, hoarseness, decreased energy level, night sweats, recent weight changes, heartburn, muscular pain and weakness, depressive symptoms, obsessiveness, worrying, sexual difficulties, cough, shortness of breath, and wheezing (Tr. 646). She also complained that hand and arm pain impaired her activities of daily living (Tr. 655). She presented with a depressed mood and flat affect (Tr. 656). Dr. Rogers performed a physical examination (Tr. 657-58) and assessed a cervical spine impairment, bilateral AC joint arthropathy, bilateral carpal tunnel syndrome, bilateral ulnar compromise at the elbows, right wrist arthropathy, chronic low back pain of indeterminate etiology, and depression (Tr. 658-59). Dr. Rogers assessed a 52% impairment of the right upper extremity, a 30% impairment of the left upper extremity, and a 31% impairment of the whole person (Tr. 659). On March 17, 2010, a nerve conduction study of the upper extremities showed evidence of bilateral carpal tunnel syndrome, with the left being more greatly affected than the right, along with bilateral ulnar entrapment neuropathies at the elbow and wrist (Tr. 676-77).

The plaintiff saw Dr. Rogers again on July 1, 2010, and reported injuries from a fall on her knees on a carpeted floor, along with persistent pain in her knees and burning in her hands and feet (Tr. 662). Dr. Rogers again performed a physical examination (Tr. 663) and assessed chronic daily headaches with migraine components, cervicalgia, bilateral AC joint arthropathy, bilateral carpal tunnel syndrome, chronic low back pain, bilateral knee pain status post fall injury, neuropathy of indeterminate etiology, and depression with anxiety (Tr. 664).

On November 8, 2010, the plaintiff saw Dr. Rogers and complained of constant sinus congestion, sore throat, hoarseness, decreased energy level, night sweats,

recent weight change, frequent heartburn, muscular pain and weakness, headaches, depressive symptoms, obsessiveness, worrying, sexual difficulties, cough, shortness of breath, and wheezing (Tr. 672). She reported that she was feeling about the same but was experiencing some pain in her right knee and hand (*Id.*). Dr. Rogers assessed depression, anxiety, migraines, carpal tunnel syndrome, arthritis of the knee, shoulder pain, lumber degenerative disc disease, cervical radiculitis, scoliosis, and insomnia (Tr. 674-75).

On December 22, 2010, the plaintiff saw Dr. Rogers and complained of constant sinus congestion, sore throat, hoarseness, decreased energy level, night sweats, recent weight change, frequent heartburn, muscular pain and weakness, headaches, depressive symptoms, obsessiveness, worrying, sexual difficulties, cough, shortness of breath, and wheezing (Tr. 668). She also stated that her right kneecap was burning, that she experienced pain and numbness in her right leg and foot, and that her hands were numb (*Id.*). Dr. Rogers assessed depression, anxiety, migraines, carpal tunnel syndrome, arthritis of the knee, shoulder pain, lumber degenerative disc disease, cervical radiculitis, scoliosis, and insomnia (Tr. 669-700).

On February 2, 2011, just before her alleged onset date, the plaintiff saw Dr. Rogers and reported sinus congestion, sore throat, hoarseness, frequent heartburn, depressive symptoms, obsessiveness, worrying, sexual difficulties, cough, shortness of breath, and wheezing (Tr. 678). She reported that she had injured her left shoulder while working and was experiencing pain in her left shoulder and cervical spine (*Id.*). Dr. Rogers noted that the plaintiff showed limited mobility in her left shoulder and tenderness in her right knee and assessed depression, anxiety, migraines, carpal tunnel syndrome, arthritis of the knee, shoulder pain, lumber degenerative disc disease, cervical radiculitis, scoliosis, and insomnia (Tr. 679-80).

On March 7, 2011, the plaintiff complained to Dr. Rogers of bad pain in her hand and shoulder and trouble sleeping (Tr. 682). She told Dr. Rogers that her medications

were helping and that she was not experiencing any adverse effects (*Id.*). Dr. Rogers assessed arthritis of the knee, shoulder pain, lumbar degenerative disc disease, and cervical radiculitis (Tr. 683).

On March 9, 2011, Dr. Rogers completed a State agency form indicating that the plaintiff suffered from depression, anxiety, insomnia, and bipolar disorder (Tr. 684). He noted that psychiatric care had been recommended at another facility (*Id.*). He reported that the plaintiff was oriented with intact thought processes and adequate attention, concentration, and memory; thought content was suspicious; and mood/affect was worried/anxious, flat, and depressed. It was indicated on the form that the plaintiff exhibited "serious" work-related limitations due to her mental conditions (*Id.*). This completed form is in the record four separate times (Tr. 684, 1140, 1227, 1588).

On April 6, 2011, the plaintiff reported to Dr. Rogers that her pain was the same. She reported that medications were helping and that she was not experiencing any adverse effects. She also reported that she had had surgery on her right wrist in March (Tr. 738). Dr. Rogers assessed depression, anxiety, migraines, carpal tunnel syndrome, arthritis of the knee, shoulder pain, lumber degenerative disc disease, and scoliosis (Tr. 739).

On May 9, 2011, the plaintiff reported to Dr. Rogers that she had undergone surgery the previous week on her rotator cuff. She stated that she was not experiencing any side effects from her medications. Dr. Rogers assessed migraines, carpal tunnel syndrome, arthritis of the knee, shoulder pain, lumber degenerative disc disease, cervical radiculitis, scoliosis, and insomnia. (Tr. 734-35).

On August 10, 2011, the plaintiff complained to Dr. Rogers of sinus congestion, sore throat, hoarseness, frequent heartburn, depressive symptoms, obsessiveness, worrying, sexual difficulties, cough, shortness of breath, and wheezing. She stated that the oxycodone she was taking was too strong and making her sick and that

she would like to cut back. She reported that she was still having pain in her left shoulder but that medications were helping without any other adverse effects (Tr. 1476). Dr. Rogers assessed depression, anxiety, migraines, carpal tunnel syndrome, arthritis of the knee, shoulder pain, lumber degenerative disc disease, cervical radiculitis, scoliosis, and insomnia (Tr. 1477). On the same date, Dr. Rogers filled out an Attending Physician's Supplementary Statement for State Farm Mutual Automobile Insurance Company. Dr. Rogers reported diagnoses of 719.41[3] (pain in joint involving shoulder region); 723.1 (cervicalgia); 729.5 (pain in limb), and CTS (presumably, carpal tunnel syndrome). He noted that depression and insomnia were other complications affecting the plaintiff's condition. Dr. Rogers indicated that the plaintiff was unable to return to her occupation or to function in light or modified duty work. Dr. Rogers wrote that the plaintiff was "unable to return to any gainful employment" (Tr. 1480).

On September 8, 2011, the plaintiff complained to Dr. Rogers of sinus congestion, sore throat, hoarseness, frequent heartburn, depressive symptoms, obsessiveness, worrying, sexual difficulties, cough, shortness of breath, and wheezing. She stated that her pain was better, that medications were controlling the pain, and that she was not experiencing any side effects (while noting that oxycodone had previously made her feel sick) (Tr. 1462). Dr. Rogers assessed depression, anxiety, migraines, carpal tunnel syndrome, arthritis of the knee, shoulder pain, lumber degenerative disc disease, cervical radiculitis, scoliosis, and insomnia (Tr. 1463). Dr. Rogers completed an Attending Physician's Statement of Disability on the same date. Dr. Rogers stated that the plaintiff became unable to work on February 17, 2011, and remained totally disabled from any

---

[3]Diagnostic codes defined online at http://www.cms.gov/medicare-coverage-database/staticpages/icd-9-code-lookup.aspx

occupation. Dr. Robinson also reported that "depression" is a complication that would prolong the plaintiff's disability (Tr. 1466, 1599).

### *Dr. Lisa Heichberger*

The plaintiff submitted additional evidence to the Appeals Council (Tr. 19-20). The only record relevant to the plaintiff's arguments here is a medical source statement from Dr. Lisa Heichberger dated June 27, 2012, regarding the plaintiff's manipulative limitations (Tr. 2353-54). Dr. Heichberger had treated the plaintiff since February 17, 2004 (Tr. 2171). Dr. Heichberger stated that the plaintiff experienced tenderness, pain, muscle spasms, paresthesia, swelling, weakness, and reduced grip strength in her shoulders, elbows, wrists, hands, and fingers (Tr. 2353). She opined that the plaintiff could lift less than one pound with each arm individually and less than two pounds with both arms together (Tr. 2354). She stated that the plaintiff could not grasp, turn, or twist objects; perform fine manipulation; or reach in front of or above her body at all (*Id.*).

The Appeals Council denied the plaintiff's request for review and specifically found that the evidence submitted by the plaintiff was about a later time and did not affect the decision about whether she was disabled on or before the date of the ALJ's decision, June 6, 2012 (Tr. 16). The evidence, including Dr. Heichberger's medical source statement, was made part of the record (Tr. 21-22).

### *State Agency Physician Opinions*

On June 23, 2011, State agency physician Carl Anderson, M.D., reviewed the medical evidence of record and opined that the plaintiff could occasionally lift twenty pounds, frequently lift ten pounds, sit for six hours in an eight-hour workday, and stand or walk for six hours in an eight-hour workday (Tr. 98). He opined that she could frequently reach overhead with her left arm and frequently finger or handle with her right hand (Tr. 99).

On August 16, 2011, State agency physician Robert Estock, M.D., reviewed the medical evidence of record and opined that the plaintiff's depression and anxiety did

not meet Listings 12.04 or 12.06 (Tr. 778-80). Dr. Estock opined that the plaintiff was mildly limited in her activities of daily living; mildly limited in her ability to maintain social functioning; moderately limited in her ability to maintain concentration, persistence, or pace; and had experienced no episodes of decompensation of extended duration (Tr. 785). He stated that she was able to understand, remember, and carry out short and simple instructions and could maintain attention and concentration sufficient to complete one- to two-step instructions for periods of at least two hours throughout an eight-hour day. He also opined that she could tolerate casual interaction with coworkers and supervisors (Tr. 791).

On August 17, 2011, State agency physician Samuel Chastain, M.D., reviewed the medical evidence of record and opined that the plaintiff could occasionally lift twenty pounds, frequently lift ten pounds, sit for six hours in an eight-hour workday, and stand or walk for six hours in an eight-hour day (Tr. 794). He opined that she could never climb ropes, ladders, or scaffolds, but could occasionally perform all other postural activities (Tr. 795). Dr. Chastain opined that the plaintiff could perform no overhead lifting and frequent handling with her right arm (Tr. 796). He also opined that she should avoid concentrated exposure to extreme cold, extreme heat, and vibration, and any exposure to unprotected heights and hazardous machinery (Tr. 797).

*Administrative Hearing Testimony*

At the hearing on May 15, 2012, the plaintiff testified that she lived with her daughter, who suffered from a seizure disorder, and two-year-old granddaughter (Tr. 61-62, 67). She stated that she kept track of her daughter's medicine (Tr. 63). The plaintiff stated that during the day she took care of her granddaughter but could not do much cooking because she did not have much feeling in her hands (Tr. 60). She testified that it was hard to groom herself because she had trouble gripping with her hands (Tr. 61). She stated that she usually cooked food in the microwave and that she helped potty-train and bathe her

granddaughter (Tr. 64). She stated that she could not hold a can of beans due to her bad grip and pain in her hands (Tr. 65). The plaintiff testified that, after she dressed and fed her granddaughter, she usually read the Bible, but that she could not read newspapers or magazines because she could not focus (Tr. 66). She testified that she could feed herself and that her daughter did the laundry (Tr. 67). The plaintiff stated that she drove three or four times a month but that she usually had someone else drive her (Tr. 63-64).

The plaintiff testified that she had begun mental health treatment the month before and that she attended weekly therapy and took medication, which helped her depression a bit (Tr. 59-60). She testified that during the night she experienced pain and numbness in her hands (Tr. 60). The plaintiff stated that her medications hurt her stomach, made her sleepy, and affected her concentration. She testified that she could not stand or walk very long because her knees buckled (Tr. 68). She stated that someone else usually did her grocery shopping (Tr. 89). The plaintiff stated that she had trouble kneeling, stooping, straightening her arm, and lifting her arm above her head (Tr. 68-69). She estimated that pain limited her to three hours of sleep each night. She testified that she did not have any hobbies and did no activities (Tr. 70).

A vocational expert also testified at the hearing. The ALJ asked the vocational expert to consider an individual of the plaintiff's age and vocational background who was limited to sedentary work with the following non-exertional limitations: she could occasionally climb ramps or stairs, balance, stoop, kneel, crouch, and crawl; she should avoid concentrated exposure to respiratory irritants and hazards; she could not perform overhead work with either extremity and could only frequently handle with the right arm; she must avoid concentrated exposure to extreme temperatures and any exposure to heights and hazardous machinery; she could perform simple, one- to two-step tasks in an environment with only occasional, casual, cursory interaction with the public and coworkers (Tr. 75-76). The vocational expert testified that this individual could not perform the

plaintiff's past relevant work but could perform other work existing in significant numbers in the national economy (*Id*.).

## ANALYSIS

The plaintiff argues that the ALJ erred by (1) failing to evaluate Dr. Rogers' opinions and (2) failing to properly consider the side effects of her medications on her ability to work. The plaintiff further argues that the Appeals Council erred by failing to evaluate the opinion of her family doctor, Dr. Heichberger, regarding the use of her hands and arms.

### *Treating Physicians*

The regulations require that all medical opinions in a case be considered, 20 C.F.R. §§ 404.1527(b), 416.927(b), and, unless a treating source's opinion is given controlling weight, weighed according to the following non-exclusive list: (1) the examining relationship; (2) the length of the treatment relationship and the frequency of the examinations; (3) the nature and extent of the treatment relationship; (4) the evidence with which the physician supports his opinion; (5) the consistency of the opinion; and (6) whether the physician is a specialist in the area in which he is rendering an opinion. *Id*. §§ 404.1527(c)(1)-(5), 416.927(c)(1)-(5). *See also Johnson v. Barnhart*, 434 F.3d 650, 654 (4th Cir. 2005). However, statements that a patient is "disabled" or "unable to work" or similar assertions are not medical opinions. These are administrative findings reserved for the Commissioner's determination. SSR 96-5p, 1996 WL 374183, at *5.

The opinion of a treating physician is entitled to controlling weight if it is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in the case. *See* 20 C.F.R. §§ 404.1527(c)(2), 416.927(c)(2); *Mastro v. Apfel*, 270 F.3d 171, 178 (4th Cir. 2001). Social Security Ruling ("SSR") 96-2p requires that an ALJ give specific reasons for the weight given to a treating physician's medical opinion. 1996 WL 374188, at *5. As stated in SSR 96-2p:

> [A] finding that a treating source medical opinion is not well-supported by medically acceptable clinical and laboratory diagnostic techniques or is inconsistent with the other substantial evidence in the case record means only that the opinion is not entitled to "controlling weight," not that the opinion should be rejected. Treating source medical opinions are still entitled to deference and must be weighed using all of the factors provided in 20 C.F.R. §§ 404.1527 and 416.927. In many cases, a treating source's medical opinion will be entitled to the greatest weight and should be adopted, even if it does not meet the test for controlling weight.

*Id.* at *4.

The plaintiff first argues that the ALJ failed to evaluate the medical source opinions of her treating neurologist, Dr. Rogers. As more fully set forth above, on March 9, 2011, Dr. Rogers[4] completed a State agency form regarding the plaintiff's mental impairments, stating that the plaintiff suffered from depression, anxiety, insomnia, and bipolar disorder. He reported that the plaintiff was oriented with intact thought processes and adequate attention, concentration, and memory; thought content was suspicious; and mood/affect was worried/anxious, flat, and depressed. He further stated that the plaintiff exhibited "serious" work-related limitations due to her mental conditions (Tr. 684). The Commissioner argues that "the ALJ did not err in failing to explicitly weigh this form" because it does not constitute a "medical opinion" (def. brief at 12). However, as argued by the plaintiff, this is a State agency form – not the plaintiff's or her representative's form. The accompanying letter, dated March 7, 2011, sent by the State agency, Disability Determination Services ("DDS"), with the form states, "To fully evaluate your patient's application, we need information to assist us in determining if a mental condition

---

[4] The Commissioner implies that the opinion should not be attributed to Dr. Rogers due to the "illegible signature" on the form (def. brief at 12). Notably, the form is included with the treatment notes of Dr. Rogers in exhibit 5F of the record (Tr. 684), and the request for payment from DDS for the report is signed on behalf of Dr. Rogers (Tr. 686). Moreover, the signature on the form appears identical to Dr. Rogers' signatures on his August and September 2011 statements, where his name is also printed (*compare* Tr. 684 *with* Tr. 1466, 1480).

14

significantly limits your patient's ability to work" (Tr. 685). Dr. Rogers' opinion regarding the nature and severity of the plaintiff's mental impairments should have been considered and weighed by the ALJ. *See* 20 C.F.R. §§ 404.1527(a)(2), 416.927(a)(2) ("Medical opinions are statements from physicians . . . that reflect judgments about the nature and severity of your impairment(s), including your symptoms, diagnosis and prognosis, what you can still do despite impairment(s), and your physical or mental restrictions.").

Further, on August 10, 2011, Dr. Rogers completed an Attending Physician's Supplementary Statement for State Farm Mutual Automobile Insurance Company reporting the plaintiff's diagnoses and that depression and insomnia were other complications affecting the plaintiff's condition. He also reported that the plaintiff was not able to return to her occupation and was not able to function in light or modified duty work (Tr. 1480). On September 8, 2011, Dr. Rogers completed an Attending Physician's Statement of Disability, reporting depression as a complication that would prolong the plaintiff's disability (Tr. 1466). The Commissioner argues that the ALJ did not err in failing to weigh these statements because they were on issues reserved to the Commissioner (def. brief at 12). In the decision, the ALJ did correctly state that opinions on issues reserved to the Commissioner, even from a treating medical source, are not entitled to any specific significance (Tr. 36). However, the ALJ did not acknowledge Dr. Rogers' statements and did not state that this was the reason for rejecting them. This court "cannot determine if findings are supported by substantial evidence unless the Secretary explicitly indicates the weight given to all of the relevant evidence." *Gordon v. Schweiker*, 725 F.2d 231, 235 (4th Cir. 1984) (citations omitted). The ALJ's rationale for rejecting Dr. Rogers' opinions is especially important here as the ALJ found that the plaintiff had no severe mental impairments (Tr. 33-34), that the plaintiff's testimony regarding her limitations due to depression was not credible (Tr. 41), and afforded "limited evidentiary weight" to the opinion of the plaintiff's treating psychiatrist,

Dr. Lisa Wischhusen, regarding the plaintiff's functional limitations due to depression (Tr. 40).

Based upon the foregoing, upon remand, the ALJ should be instructed to explicitly consider, discuss, and weigh Dr. Rogers' opinions in accordance with the above-cited law. Moreover, in light of the court's recommendation that this matter be remanded for further consideration of Dr. Rogers' opinions, the undersigned further recommends that the ALJ be instructed to consider, discuss, and weigh the medical source statement of Dr. Heichberger, which the Appeals Council made part of the record (Tr. 2353-54). *See Meyer v. Astrue*, 662 F.3d 700, 706 (4th Cir. 2011) ( "[N]o fact finder has made any findings as to the treating physician's opinion or attempted to reconcile that evidence with the conflicting and supporting evidence in the record. Assessing the probative value of competing evidence is quintessentially the role of the fact finder. . . ."). The court need not address the plaintiff's remaining issue, as it may be rendered moot on remand. *See Boone v. Barnhart*, 353 F.3d 203, 211 n.19 (3d Cir.2003) (remanding on other grounds and declining to address claimant's additional arguments). However, if needed, the ALJ should also address the additional allegation of error raised by the plaintiff that the ALJ failed to consider the side effects of her medications.

## **CONCLUSION AND RECOMMENDATION**

Now, therefore, based on the foregoing, it is recommended that the Commissioner's decision be reversed pursuant to sentence four of 42 U.S.C. § 405(g) and that the case be remanded to the Commissioner for further consideration as discussed above.

IT IS SO RECOMMENDED.

s/ Kevin F. McDonald
United States Magistrate Judge

December 3, 2014
Greenville, South Carolina